1

2

3

4

5

6

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

7

8

9

10

11

MARIA KHARITONOVA,

Plaintiff,

v.

SERGIO ALBARRAN, et al.,

Defendants.

Case No.  3:26-cv-01362-JSC

**ORDER GRANTING PRELIMINARY
INJUNCTION**

Re: Dkt. Nos. 2, 3

12

13

14

15

16

17

18

19

20

21

22

     Maria Kharitonova, who is originally from Russia, has lived in the United States for over

13 years and has a pending asylum application.  On February 13, 2026, she was detained and

arrested by Immigration and Customs Enforcement (ICE) outside the home where she works as a

childcare provider.  She filed this habeas petition and a motion for a temporary restraining order

(TRO) seeking her release from custody and to enjoin Defendants from re-detaining her absent

prior notice and a pre-deprivation hearing. (Dkt. Nos. 1, 2.[1]) The Court granted the TRO, ordered

her release, and set a briefing schedule on the now pending motion for preliminary injunction.

(Dkt. Nos. 3, 9.) After carefully considering the arguments and briefing submitted, the Court

concludes oral argument is unnecessary, *see* Civ. L.R. 7-1(b), VACATES the February 26, 2026

hearing, and GRANTS the preliminary injunction.

23

**BACKGROUND**

24

25

26

    Petitioner, who is 66 years old, entered the United States on a nonimmigrant visa in

December 2012.  (Dkt. No. 1 at ¶ 19.)  Within one year of her arrival, she filed her Form I-589,

Application for Asylum and Withholding of Removal, with U.S. Citizenship and Immigration

27

28

[1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

United States District Court
Northern District of California

1   Services ("USCIS"). (*Id.* at ¶ 21.) On July 16, 2014, her asylum case was referred to the

2   Executive Office for Immigration Review ("EOIR"), which issued her a Notice to Appear. (*Id.*)

3   Petitioner has never had a bond hearing. (Dkt. No. 2-2, Shamieh Decl. at ¶ 4.) She has resided

4   continuously in the United States, attended all scheduled hearings and, at the time of her detention,

5   was preparing to appear for her merits hearing scheduled for December 22, 2026. (*Id.* at ¶ 22.)

6   Petitioner has no criminal history and suffers from serious health conditions including diabetes,

7   high blood pressure, and kidney problems for which she takes medication twice a day. (Dkt. No.

8   2-2, Shamieh Decl. at ¶¶ 4-5.)

9           On February 13, 2026, at around 9:00 a.m., Petitioner was detained on the street in front of

10  the home in San Francisco where she works as a full-time nanny. (Dkt. No. 2 at 6.) Following her

11  arrest, her attorney filed the underlying habeas petition and TRO. The general duty judge granted

12  the TRO ex parte and ordered her immediate release. (Dkt. No. 3.) The government filed a status

13  report the following day confirming she had been released. (Dkt. No. 4.) The case was then

14  assigned to the undersigned judge who rescheduled the hearing on the preliminary injunction to

15  February 26, 2026. (Dkt. No. 9.) The government has since filed a response to the habeas petition

16  which the Court construes as an opposition to the preliminary injunction. (Dkt. No. 10.) The

17  government insists its sudden detention of Petitioner is lawful, and that it does not even have to

18  give her a detention hearing. (Dkt. No. 10-1, Samra Decl. at ¶ 11 ("ICE determined that Petitioner

19  would be detained without bond.").

20                                            **DISCUSSION**

21          To obtain a preliminary injunction, Petitioner must establish (1) she is "likely to succeed

22  on the merits," (2) she is "likely to suffer irreparable harm in the absence of preliminary relief,"

23  (3) "the balance of equities tips in [her] favor," and (4) "an injunction is in the public interest."

24  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "If a plaintiff can only show that

25  there are 'serious questions going to the merits'—a lesser showing than likelihood of success on

26  the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply

27  in the plaintiff's favor, and the other two *Winter* factors are satisfied.'" *All. for the Wild Rockies v.*

28  *Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709

United States District Court
Northern District of California

2

United States District Court
Northern District of California

1    F.3d 1281, 1291 (9th Cir. 2013)). "Where, as here, the party opposing injunctive relief is a

2    government entity, the third and fourth factors—the balance of equities and the public interest—

3    merge." *Hubbard v. City of San Diego*, 139 F.4th 843, 854 (9th Cir. 2025) (citation modified).

###         A.        Likelihood of Success/Serious Legal Questions

5             "Freedom from imprisonment ... lies at the heart of the liberty" that the Fifth Amendment's

6    Due Process Clause protects. *Zadvydas v. Davis,* 533 U.S. 678, 690 (2001). "[T]he Due Process

7    Clause applies to all 'persons' within the United States," including noncitizens, "whether their

8    presence here is lawful, unlawful, temporary, or permanent." *Id*. at 693; *see also Trump v. J.G.G.*,

9    604 U.S. 670, 673 (2025) ("'The Fifth Amendment entitles [noncitizens] to due process of law' in

10   the context of removal proceedings.") (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The

11   Due Process Clause generally "requires some kind of a hearing before the State deprives a person

12   of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

13            Petitioner has demonstrated serious legal questions as to her procedural due process claim.

14   Courts examine procedural due process claims in two steps: first whether the petitioner was

15   deprived of a constitutionally protected liberty interest, and second "whether that deprivation was

16   accompanied by sufficient procedural protections." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th

17   Cir. 2022).

18            Petitioner has a vested liberty interest in remaining free from detention as she has lived for

19   the last 13 years. *Zadvydas*, 533 U.S. at 690.  The Supreme Court has repeatedly recognized that

20   individuals who have been released from custody, even when such release is conditional, have a

21   liberty interest in their continued liberty. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)

22   (finding a parolee had an interest in his continued liberty); *Young v. Harper*, 520 U.S. 143, 150

23   (1997) (applying *Morrissey* to pre-parole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (finding

24   probationers have a liberty interest).  An immigration petitioner likewise "gain[s] a liberty interest

25   in his continued freedom after he was released from custody on his own recognizance."  *R.C.C. v.*

26   *Noem*, No. 1:26-CV-00373-TLN-EFB, 2026 WL 369796, at *3 (E.D. Cal. Feb. 10, 2026).

27   The government's decision not to detain Petitioner "when it processed her asylum application,

28   took her biometrics, referred her asylum case to EOIR, and advised her to appear for multiple

United States District Court
Northern District of California

1    hearings over a period of years," likewise gave rise to "a liberty interest on Petitioner's part that

2    she would remain free unless she violated her conditions of release." (Dkt. No. 1 at ¶ 35.)

3          The government's insistence Petitioner lacks a liberty interest because it never before

4    sought to detain her is specious. (Dkt. No. 10 at 10 ("Petitioner does not assert that she was

5    previously [sic] from DHS custody. She thus lacks the event identified in her cited cases that

6    supposedly gives rise to a protected liberty interest.").) Although the government did not detain

7    and then release her, it made a decision *not* to detain her in the first place; Petitioner thus has the

8    same liberty interest in her continued freedom as an individual initially detained. *See Barco*

9    *Mercado v. Francis*, No. 25-CV-6582 (LAK), --- F.Supp.3d ---, 2025 WL 3295903, at *4

10   (S.D.N.Y. Nov. 26, 2025) (attaching appendix identifying "350 [] cases decided by over 160

11   different judges sitting in about 50 different courts spread across the United States"

12   "overwhelmingly" finding individuals detained and then released had a vested liberty interest).

13   The government's position Petitioner does not have the same liberty interest is unsupported by any

14   legal authority.

15         To determine what procedures are constitutionally sufficient to protect Petitioner's liberty

16   interest, the Court applies the three-part test established in *Matthews v. Eldridge:* (1) the private

17   interest affected; (2) the risk of an erroneous deprivation and the probable value of any additional

18   or substitute procedural safeguards; and (3) the government's interest. 424 U.S. 319, 335 (1976).

19   Each of these factors weighs in Petitioner's favor.

20         First, as noted above, Petitioner has a significant liberty interest in remaining free from

21   detention as she has lived for the last 13 years. Second, "the risk of an erroneous deprivation [of

22   liberty] is high" when, as here, "[the petitioner] has not received any bond or custody

23   redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at

24   *5 (E.D. Cal. May 16, 2025). Civil immigration detention is nonpunitive and permissible only to

25   prevent flight or protect against danger to the community, *see Zadvydas*, 533 U.S. at 690, but as

26   discussed above, the government offers no argument, let alone any evidence, Petitioner's detention

27   would serve either purpose. Finally, the government has not articulated any legitimate interest in

28   support of detaining Petitioner without a pre-detention hearing. "In immigration court, custody

United States District Court
Northern District of California

1    hearings are routine and impose a minimal" cost." *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048

2    (E.D. Cal. 2025) (cleaned up). "If the government wishes to re-arrest [petitioner] at any point, it

3    has the power to take steps toward doing so; but its interest in doing so without a hearing is low."

4    *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019).

5           In sum, each of the *Matthews* factors favor Petitioner so she has demonstrated, at a

6    minimum, serious legal questions regarding her claim that the Due Process Clause entitles her to a

7    bond hearing before an immigration judge prior to any re-arrest or detention.

8           **B.     Irreparable Harm**

9           Petitioner has met her burden of showing she is likely to suffer irreparable harm in the

10   absence of preliminary injunctive relief.  "Deprivation of physical liberty by detention constitutes

11   irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018); *see also Hernandez v.*

12   *Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("It is well established that the deprivation of

13   constitutional rights 'unquestionably constitutes irreparable injury.'"). "When an alleged

14   deprivation of a constitutional right is involved, most courts hold that no further showing of

15   irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005).

16   Unconstitutional deprivation of liberty satisfies the burden of irreparable harm.

17          **C.     Balance of Hardships and the Public Interest**

18          Lastly, the balance of the equities and the public interest, which merge in this case because

19   the government is the opposing party, tip sharply in Petitioner's favor.  Preventing the violation of

20   constitutional rights serves the public interest. *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir.

21   2005). Specifically, "the public has a strong interest in upholding procedural protections against

22   unlawful detention, and the Ninth Circuit has recognized that the costs to the public of

23   immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-CV-01434-JST, 2021

24   WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up).  The only potential injury the

25   government faces is a "short delay" in detaining Petitioner if it "ultimately demonstrates to a

26   neutral decisionmaker" her detention is necessary to prevent flight or danger to the community.

27   *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *14 (N.D. Cal.

28   Sept. 12, 2025).

United States District Court
Northern District of California

1    The Court thus concludes the balance of hardships tips sharply in Petitioner's favor.

2                                    **CONCLUSION**

3        For the reasons stated above, the Court GRANTS Petitioner's request for a preliminary

4    injunction. If the government seeks to re-detain Petitioner, it must provide no less than seven (7)

5    days' notice and a pre-detention hearing during which a neutral decisionmaker must consider

6    whether Petitioner is either a danger to the community or flight risk such that her physical custody

7    is required. This Order shall remain in effect until further order of the Court. The government does

8    not request, and the Court declines to require, a security.

9        The parties shall meet and confer and, within 14 days of the date of this Order, propose a

10   schedule for resolving the remainder of this case.  As in light of the government's opposition

11   Petitioner has more information as to the basis for the government's sudden detention, the parties

12   shall discuss whether amendment of the Petition is necessary, and if so, a schedule for filing any

13   amended petition and subsequent briefing on the amended petition.  Alternatively, the parties may

14   stipulate that the reasoning in this order warrants granting the Petition and entering judgment.

15       This Order disposes of Docket Nos.  2, 3, and 9.

16       **IT IS SO ORDERED.**

17   Dated: February 25, 2026

18

19   _____
     JACQUELINE SCOTT CORLEY
20   United States District Judge

21

22

23

24

25

26

27

28