United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARIA KHARITONOVA,
Petitioner,
v.
SERGIO ALBARRAN, et al.,
Respondents.

Case No. 3:26-cv-01362-JSC

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Maria Kharitonova, who is originally from Russia, has lived in the United States for over 13 years and has a pending asylum application. On February 13, 2026, she was detained and arrested by Immigration and Customs Enforcement (ICE) outside the home where she works as a childcare provider. Petitioner's habeas petition challenging her detention is now pending before the Court. (Dkt. No. 1.[1]) For the reasons set forth below, the Court GRANTS the petition.

**BACKGROUND**

Petitioner, who is 66 years old, entered the United States on a nonimmigrant visa in December 2012. (Dkt. No. 1 at ¶ 19.) Within one year of her arrival, she filed her Form I-589, Application for Asylum and Withholding of Removal, with U.S. Citizenship and Immigration Services ("USCIS"). (*Id.* at ¶ 21.) On July 16, 2014, her asylum case was referred to the Executive Office for Immigration Review ("EOIR"), which issued her a Notice to Appear. (*Id.*) Petitioner has never had a bond hearing. (Dkt. No. 2-2, Shamieh Decl. at ¶ 4.) She has resided continuously in the United States, attended all scheduled hearings, and, at the time of her detention, was

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

preparing to appear for her merits hearing scheduled for December 22, 2026. (*Id*. at ¶ 22.) Petitioner has no criminal history and suffers from serious health conditions including diabetes, high blood pressure, and kidney problems for which she takes medication twice a day. (Dkt. No. 2-2, Shamieh Decl. at ¶¶ 4-5.)

On February 13, 2026, at around 9:00 a.m., Petitioner was detained on the street in front of the home in San Francisco where she works as a full-time nanny. (Dkt. No. 2 at 6.) Following her arrest, her attorney filed the underlying habeas petition and application for a TRO. The general duty judge granted the TRO ex parte and ordered her immediate release. (Dkt. No. 3.) The Court subsequently granted her motion for a preliminary injunction, concluding Petitioner had demonstrated "serious legal questions regarding her claim that the Due Process Clause entitles her to a bond hearing before an immigration judge prior to any re-arrest or detention." (Dkt. No. 12 at 5.) Respondents were enjoined from re-detaining Petitioner unless they provided "seven (7) days' notice and a pre-detention hearing during which a neutral decisionmaker must consider whether Petitioner is either a danger to the community or flight risk such that her physical custody is required." (*Id*. at 6.) Petitioner's habeas petition is now fully briefed. (Dkt. Nos. 15, 16.)

## DISCUSSION

The Fifth Amendment guarantees that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment ... lies at the heart of the liberty" that the Fifth Amendment's Due Process Clause protects. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all 'persons' within the United States," including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id*. at 693; *see also Trump v. J.G.G*., 604 U.S. 670, 673 (2025) ("'The Fifth Amendment entitles [noncitizens] to due process of law' in the context of removal proceedings.") (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). Further, "noncitizens 'who have established connections in this country [beyond merely entering the United States] have due process rights in deportation proceedings." *Chavarriaga Rojas v. Albarran*, 826 F. Supp. 3d 1155, 1165 (N.D. Cal. 2025)

(quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020)).

Petitioner entered this country lawfully, applied for asylum within one year of her arrival, and has complied with every requirement of her removal proceedings over the last 12 years. (Dkt. No. 1 at ¶¶ 20-22.) She has no criminal history and has developed strong community ties in the Bay Area where she has resided continuously for the past 13 years. (*Id*. at 22; Dkt. No. 16 at 15.) Further, over the past 12 years, Petitioner has had multiple prior interactions with immigration authorities as her asylum application proceeded through the immigration system. The decision to release—or as here, not to detain—is "based on an evaluation[,]" the individual "can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life," creating "at least an implicit promise" that the parole—or decision not to detain—will be revoked only if the individual fails to live up to the applicable "conditions." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Petitioner's lengthy community ties and the government's decision not to detain her at any point over the last 12 years has given rise to a protected liberty interest in remaining out of immigration custody that can only be taken away only if the government's procedure for doing so accords with due process.[2] *See, e.g., Suarez v. Warden, California City Detention Facility*, No. 1:26-CV-05989-TLN-SCR, 2026 WL 2455252, at *2 (E.D. Cal. Aug. 21, 2026) ("Petitioner has a protected liberty interest in remaining free from custody based on his significant community ties and the government's decision not to detain him in or around February 2025, after he applied for asylum but had already overstayed his visa"); *Ke v. Janec[k]a*, No. 5:26-CV-04360-DTB, 2026 WL 2508150, at *3 (C.D. Cal. Aug. 25, 2026) ("Petitioner has demonstrated a protected liberty interest in remaining at liberty in the community

---

[2] The Court rejects Respondents' argument Petitioner was required to exhaust her administrative remedies before bringing her due process claims. *See Hernandez v. Mullin*, No. 5:26-CV-00585-JAK (ADSX), 2026 WL 846037, at *8 (C.D. Cal. Mar. 24, 2026) (excusing prudential exhaustion as futile because the petitioner's procedural due process claim was not within the jurisdiction of the BIA and "requiring Petitioner to be detained in alleged violation of his constitutional right to due process, pending [exhaustion] would cause irreparable harm."); *E.E.O.H. v. Noem*, No. 1:26-CV-01266-JLT-SAB-HC, 2026 WL 850363, at *6 (E.D. Cal. Mar. 26, 2026), report and recommendation adopted, No. 1:26-CV-01266 JLT SAB (HC), 2026 WL 967670 (E.D. Cal. Apr. 9, 2026) ("[W]here the agency's position on the question at issue 'appears already set,' and it is 'very likely' what the result of recourse to administrative remedies would be, such recourse would be futile and is not required.") (quoting *El Rescate Legal Servs., Inc. v. Exec. Off. of Immigr. Rev.*, 959 F.2d 742, 747 (9th Cir. 1991)).

absent sufficient justification for her re-detention, based on the government's decision not to detain her or otherwise impede her liberty while exercising authority over her for purposes of adjudicating her application for immigration relief" and collecting cases).

To determine whether detention without a pre-deprivation hearing violates procedural due process, the Court applies the three-part test established in *Matthews v. Eldridge*, 424 U.S. 319 (1976). First, the Court concludes Petitioner has a significant liberty interest in remaining out of custody. Second, "where ... the petitioner has not received any bond or custody redetermination hearing," "the risk of an erroneous deprivation of liberty is high." *Singh v. Andrews*, 803 F.Supp.3d 1035, 1046 (E.D. Cal. 2025) (citation modified). That is because "neither Petitioner nor Respondents had an opportunity to determine whether any valid basis exists for [his] detention." *Oliveros v. Kaiser*, No. 25-CV-07117-BLF, 2025 WL 2677125, at *7 (N.D. Cal. Sept. 18, 2025). Civil immigration detention is supposed to be nonpunitive and permissible only to prevent flight or protect against danger to the community, *see Zadvydas*, 533 U.S. at 690, but Respondents offer no evidence Petitioner's detention would serve either purpose. Under these circumstances, a post-deprivation hearing is not a sufficient procedural safeguard. *See Domingo v. Kaiser*, No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention."); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); *Jorge M.F. v. Jennings*, 534 F. Supp. 3d 1050, 1055 (N.D. Cal. 2021) ("[I]f Petitioner is detained, he will already have suffered the injury he is now seeking to avoid").

Finally, there is no countervailing government interest which would support conducting a bond hearing only *after* Petitioner has been detained, rather than before. *See Morrissey,* 408 U.S. at 483 ("the State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial[,] ... [y]et, the State has no

interest in revoking parole without some informal procedural guarantees."). Respondents have not articulated a legitimate interest supporting arresting Petitioner without a pre-detention hearing. "In immigration court, custody hearings are routine and impose a minimal" cost." *Singh*, 803 F. Supp. 3d at 1048 (cleaned up). "If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019).

**CONCLUSION**

For the above reasons, the Petition is GRANTED. If the Government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice and hold a pre-deprivation bond hearing before a neutral arbiter pursuant to section 1226(a) and its implementing regulations, at which Petitioner's eligibility for bond must be considered. This Order does not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal.

The Court will enter separate judgment and close the file.

**IT IS SO ORDERED.**

Dated: September 8, 2026

JACQUELINE SCOTT CORLEY
United States District Judge